UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| DOUGLAS D. SEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:20-CV-462-TAV-JEM |
| | ) |
| NORFOLK SOUTHERN | ) |
| RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion for summary judgment [Doc. 22]. Plaintiff has responded [Doc. 25] and defendant has replied [Doc. 26]. For the reasons that follow, defendant's motion for summary judgment [Doc. 22] will be **GRANTED** and this case will be **DISMISSED**.

**I.      Background**

On November 2, 2020, plaintiff filed this action for personal injury damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.* [Doc. 1, p. 1]. Specifically, plaintiff alleges that he was employed as a carman by defendant and in the course of his employment engaged in the inspection, maintenance, and repair of railcars [*Id.* at 1–2]. He contends that, during his employment, defendant negligently required and instructed him to work in unsafe conditions with unsafe tools and equipment, including strenuous overhead lifting and manually moving heavy equipment and tools without sufficient rest [*Id.* at 2–3]. In April 2018, plaintiff was required to handle heavy rail jacks

by hand throughout the rail yard, and, as a result, he developed severe pain in his right arm and shoulder [*Id.* at 3].

In support of summary judgment, the parties submitted several medical records, which the Court summarizes in relevant part. A report from a routine adult checkup on March 1, 2012, states that "[t]he arthritis we were able to demonstrate for him last visit has become more obvious to the patient in the hips knees *shoulders* and hands" [Doc. 25-2 (emphasis added)]. At another routine checkup on December 6, 2013, plaintiff's medical paperwork stated that he "had aches and pains in the elbows hips ankles and knees bilaterally sometimes also in the *shoulders* and is [sic] a family history of rheumatoid arthritis" [Doc. 25-3 (emphasis added)].

Records from a physical exam on March 2, 2017, indicate that plaintiff's "[o]nly new complaint is right bicep pain and weakness for the last one year" and that he "experiences a sharp pain if he tries to lift heavy objects or do a pull up" [Doc. 24, p. 39; Doc. 25-5, p. 1]. Plaintiff's physician recommended rest, ice, compression and NSAID medications for two weeks for plaintiff's bicep tendinitis, and instructed plaintiff to follow up if it did not improve [Doc. 24, p. 42; Doc. 25-5, p. 2]. In his deposition, plaintiff admitted that the "heavy objects" he referred to include the portable jacks [Doc. 25-11, pp. 142–43]. When asked about the pain he experienced when lifting the portable jacks, plaintiff stated that "[i]t would just depend" and "it didn't hurt all the time, every time" [*Id.* at 143]. Plaintiff admitted that the medical report stated that the pain was "chronic," was "work/occupational, repetitive" and "worse for 2 years," and further admitted that he

provided that information, which was accurate to the best of his knowledge [*Id.* at 144]. As to the statement that he had experienced this pain for two years, plaintiff stated that the pain began "somewhere around '17, the latter end of '16 coming into '17. Because by that time, I'd been jacking quite a few times" [*Id.* at 145–46]. He admitted that there was no question in his mind that the pain was a result of jacking the railroad cars [*Id.* at 146].

On April 24, 2018, plaintiff presented for a new patient appointment and "complain[ed] of non-traumatic pain in the right arm and shoulder" which he stated had "gradually progressed over the past year" [Doc. 25-6, p. 1]. This report indicated that plaintiff's right shoulder pain was consistent with a rotator cuff pathology [*Id.* at 2]. On June 5, 2018, plaintiff returned for a three-week follow up regarding his right arm and shoulder [Doc. 25-7]. Plaintiff stated that the pain in his shoulder was still present, and he was not able to raise his arm. The report noted that plaintiff had an MRI which showed small full thickness tear of supraspinatus tendon, and plaintiff was having pain with elevation or rotation of the shoulder but was still working [*Id.*].

On July 17, 2018, plaintiff underwent surgery for injuries to his right shoulder [Doc. 25-8; Doc. 25-11, pp. 10, 15]. In a self-filled patient registration sheet for "Knoxville Orthopaedic Clinic," dated July 16, 2019, plaintiff stated he was presenting for "check up on shoulder repair" and indicated that the date of injury or onset was "April 2016-17" [Doc. 24, p. 44]. In his deposition, plaintiff admitted that it was his handwriting on the July 16, 2019, form and that he filled it out at the doctor's office [Doc. 25-11, pp. 148–49]. He stated that he answered the questions truthfully to the best of his ability but stated that

3

there was a mistake on the form, and it should have stated that the injury onset was April 2017-2018 [*Id.* at 149].

Records from a physical therapy visit on July 23, 2018, indicate that plaintiff had been diagnosed with a complete tear of the right rotator cuff [Doc. 24, p. 34]. This record reflects that plaintiff's chief complaint was "right shoulder pain" and states that "Symptoms are chronic. Mechanism of injury: work/occupational, repetitive. Symptom duration: worse for 2 years" [*Id.*]. Additional comments on this record indicate that plaintiff "stated he works on the tracks of the railroad. He has had pain for 2 years. He has to lift up to 90 pounds at least frequently at work. His shoulder started hurting when he started the job he has now at the railroad" [*Id.* at 35].

In his August 12, 2021, deposition, plaintiff testified that he began the "work truck job" on August 20, 2016, and that from this time on was the relevant period for this lawsuit [Doc. 25-11, p. 126]. Plaintiff stated that, during the course of treatment for his shoulder injury, he would answer questions from his doctors and therapists truthfully to the best of his ability [*Id.* at 140–41]. Plaintiff stated that when he first began having shoulder pain "it would just be an ache" and he initially believed it was arthritis or bursitis, particularly as he was getting older [*Id.* at 149]. He continued to think his pain was "arthritis or something" until 2018, when it became "debilitating" [*Id.* at 150]. Plaintiff explained "it never was just like a crippling pain or anything, just an ache, until . . . April 2018, after – it was three or four days we had jacked in a row, and that one morning I got up and I

4

couldn't even reach up and touch my face" [*Id.* at 163]. He acknowledged that, even though he thought it was "arthritis or something," he believed when he first began experiencing pain that lifting the jacks may have been a contributing factor [*Id.* at 150–51].

On December 22, 2021, plaintiff submitted an affidavit stating that, prior to April 2018, he had only intermittent aches and soreness in his right shoulder that never caused significant problems, but in April 2018, he had several days in a row where he was required to do the jacking procedure in the railyard, and, after those several days, he woke with severe pain in his right shoulder to the point that he could not lift his arm above his head, at which point he realized his shoulder was injured [Doc. 25-9, pp. 2–3].

**II.     Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "[t]he non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 252 (1986)).

## III. Analysis

Defendant argues that plaintiff's claim is barred by the three-year statute of limitations under the FELA [Doc. 23, p. 1]. Defendant contends that the "discovery rule" applies to FELA claims [*Id.* at 8–9]. Applying that rule, defendant argues that plaintiff's cause of action accrued the moment he began experiencing right arm and shoulder pain that he believed was caused by his work, which he acknowledged occurred in August 2016 [*Id.* at 11]. Defendant contends that, at the absolute latest, plaintiff knew of his injury and its cause by March 2017, when he saw a medical provider with complaints of sharp pain in his right arm when attempting to carry heavy objects, which he admitted included the portable rail jacks [*Id.* at 12]. Defendant argues that an objectively reasonable person in plaintiff's position would, and did, recognize by 2016, or at least by early 2017, more than three years prior to filing this lawsuit, that his pain was potentially work-related [*Id.*]. Moreover, defendant contends that the Sixth Circuit has recognized that a continuation, progression, or "aggravation" of an injury is not a separate and distinct injury for purposes of FELA [*Id.* at 13].

Plaintiff responds that he was first told by his treating physician that his shoulder symptoms were caused by his railroad job duties in April 2018, therefore, his November 2020 claim is within the three-year statute of limitations [Doc. 25-1, p. 1]. Plaintiff notes that a plaintiff's burden in a FELA case is much lighter than in an ordinary negligence case [*Id.* at 11]. Plaintiff highlights case law in which the Supreme Court has explained the importance of jury determinations in FELA cases and asserts that the motion

6

for summary judgment asks the Court to substitute its judgment in place of a jury's factual determinations [*Id.* at 15–16]. Plaintiff argues that the Supreme Court has recognized that, with progressive occupational injuries, the accrual of a cause of action cannot be precisely pinpointed [*Id.* at 16]. Instead, as plaintiff contends, a FELA cause of action accrues when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause [*Id.*]. Plaintiff argues that several courts have found that the FELA statute of limitations was not triggered by "intermittent and seeming innocuous symptoms, such as occasional aches and pains" [*Id.* at 18]. Plaintiff contends that notice of injury and the cause of the injury is not established by sporadic or even persistent non-severe aches and pains, even if coupled with some medical visits and treatment, and even when the aches and pains occur at work [*Id.* at 23].

Defendant replies that trial courts routinely grant summary judgment in time-barred FELA cases [Doc. 26, pp. 1–2]. Defendant argues that plaintiff admitted in his deposition that he first began experiencing arm/shoulder pain in August 2016 and recognized that his handling of the portable jacks was the likely source of this pain [*Id.* at 3–4]. This testimony is corroborated by his medical records which, in mid-2018, describe his arm/shoulder pain as "chronic" and progressively "worse for 2 years," as well as stating that the pain started when plaintiff started the job with the railroad [*Id.* at 4]. Even if the Court does not find that plaintiff's claim accrued in August 2016, defendant argues that it at least accrued by March 2017 because, by that point, plaintiff was seeing a medical provider with complaints of sharp pain when attempting to lift heavy objects, which he acknowledged included the

7

portable jacks [*Id.* at 5]. Defendant also argues that plaintiff's later-submitted affidavit should be disregarded because its sole purpose is to create a "sham" issue of fact that is contradicted by other objectively verifiable evidence [*Id.* at 6].

"The FELA provides a federal cause of action against a railroad by any employee injured or killed as a result of the railroad's negligence." *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 588 (6th Cir. 2001). Claims under the FELA are subject to a three-year statute of limitations. *Id.*; 45 U.S.C. § 56. In determining when a cause of action under the FELA accrues, one of two rules applies: the time-of-event rule or the discovery rule. *Fonseca*, 246 F.3d at 588. The time-of-event rule applies when "a traumatic event occurs, resulting in a noticeable injury, even if the full manifestation of the harm remains latent." *Id.* On the other hand, the discovery rule applies "when no significant injury is discernable at the time of the tortious event, or if the cause of an injury is not apparent." *Id.*; *Henry v. Norfolk S. R.R. Co.*, 605 F. App'x 508, 511 (6th Cir. 2015). Here, there appears to be no dispute that the discovery rule is the applicable standard for determining when plaintiff's FELA claim accrued.

"Under the discovery rule, a cause of action is deemed to have accrued when the plaintiff reasonably should have discovered both cause and injury." *Fonseca*, 246 F.3d at 588 (internal quotation marks omitted). However, in "cases where the alleged tortious conduct aggravates an existing injury . . . [the Sixth Circuit has] held that such aggravation is not a severable cause of action for purposes of the [FELA] statute of limitations." *Henry*, 605 F. App'x at 511.

The Sixth Circuit addressed this distinction in *Aparicio v. Norfolk & Western Railway Company*, 84 F.3d 803 (6th Cir. 1996), a case in which a railroad laborer developed persistent pain in his right hand, which resolved after conservative treatment, but returned five years later, at which point the plaintiff was diagnosed with carpal tunnel syndrome. *Fonseca*, 246 F.3d at 589. In *Aparicio*, the court held that, if plaintiff's later injury had simply been an aggravation of his earlier hand discomfort, his claim would have been time-barred, but if his later injuries were separate, his claim was not time-barred. *Id.* (citing *Aparicio*, 84 F.3d at 815). The court ultimately found that the plaintiff had created a disputed fact as to this question, and the FELA claim survived summary judgment. *Id.*

On the other hand, applying these same principles, the Sixth Circuit held in *Campbell v. Grand Trunk Western Railroad Company*, 238 F.3d 772 (6th Cir. 2001), that FELA claims by a plaintiff who began experiencing pain in his hands severe enough to awaken him from sleep but then waited to several years to see a physician, when the pain in his hands worsened, were time-barred because no reasonable jury could find that the injury was more than an aggravation of the first injury that occurred outside the limitations period. *Id.* at 589–90 (citing *Campbell*, 238 F.3d at 775).

In *Fonseca*, the Sixth Circuit found that the plaintiff had established a genuine issue of material fact as to whether his injury was separate or an aggravation of a prior injury, citing to deposition testimony in which plaintiff stated that the frequent discomfort he experienced for decades was not continuous, always subsided by the next morning, and never increased prior to his later more significant injury. *Id.* at 590–91. The court

9

concluded that these statements "suggest that the frequent discomfort that [plaintiff] experienced as a laborer are a distinct injury from the 'accumulated effects' he claims to have discovered within three years of filing his complaint." *Id.* at 591. The court noted that, if his later injury was simply an aggravation of his "earlier discomfort," then plaintiff "would have satisfied the statute of limitations only if he had filed suit . . . within three years of his first ache or pain. Such a result would undermine the purpose of the discovery rule." *Id.* at 592. Finally, the court stated that, if plaintiff had filed his FELA claim at the first sign of pain "without any medical evidence beyond his transient aches and pains after a long day's work, the [defendant] would likely have claimed that the action lacked any evidentiary support." *Id.* The Sixth Circuit accordingly reversed the district court's grant of summary judgment on statute of limitations grounds. *Id.*

Here, because plaintiff filed his FELA claim on November 2, 2020 [Doc. 1], his claim must have accrued no earlier than November 2, 2017, to be timely under the applicable three-year statute of limitations. Applying the discovery rule, this means that defendant must establish that plaintiff should reasonably have known of his shoulder injury and that his work jacking railroad cars was the cause of the injury no later than November 2, 2017. *See Fonseca*, 246 F.3d at 588. Ultimately, the Court finds that, viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact as to whether plaintiff knew or reasonably should have known of his shoulder injury and its cause by March 2017.

10

Plaintiff posits that his claim accrued in April 2018, when he suddenly experienced arm and shoulder pain that was "debilitating" and prevented him from reaching up to touch his face [Doc. 25-11, pp. 150, 163]. Medical records support that plaintiff presented for medical attention for his right shoulder on April 24, 2018 [Doc. 25-6], which ultimately resulted in and MRI confirming a torn rotator cuff and surgery to repair the shoulder within a few months [Docs. 25-7, 25-8]. Plaintiff presents evidence that, prior to this, he believed that pain he experienced in his arm and shoulder was merely arthritis or general aches and pains [Doc. 25-11, pp. 149–50]. Plaintiff supports this theory with medical records from 2012 and 2013, indicating that plaintiff has a history of arthritis, including in his shoulders [Docs. 25-2, 25-3].

However, ultimately, medical records from 2017 and 2018, combined with plaintiff's deposition testimony, undermine any assertion that plaintiff's arm and shoulder problems in April 2018 were a separate injury, rather than an aggravation of a prior, underlying injury. On March 2, 2017, plaintiff presented to a doctor complaining of sharp pain in his right arm when lifting heavy objects [Doc. 24, p. 39; Doc. 25-5, p. 1], which plaintiff later admitted included the portable rail jacks he used at work [Doc. 25-11, pp. 142–43]. The records from this visit indicate that plaintiff's right arm pain was "chronic" and "work/occupational, repetitive," which plaintiff admitted was information he provided [*Id.* at 144]. Plaintiff also admitted that there was no question in his mind that the pain he was experiencing in March 2017 was a result of jacking the railroad cars [*Id.* at 146]. And, when plaintiff experienced the more severe arm and shoulder pain in

11

April 2018, approximately one year after this March 2017 visit, plaintiff informed doctors that the pain he was experiencing had "gradually progressed over the past year" [Doc. 25-6, p. 1]. Accordingly, the records from his April 2018 doctor's visit confirm that plaintiff's arm and shoulder pain was an aggravation of the pain he experienced in March 2017, rather than a separate injury.

In his subsequent affidavit, plaintiff appears to attempt to mitigate the evidence from his March 2017 doctor's visit by stating that, prior to April 2018, he had only intermittent aches and soreness in his right shoulder that never caused any significant problems, resulting in him not realizing his shoulder was injured until April 2018 [Doc. 25-9]. However, "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *United States ex rel Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 302–03 (6th Cir. 1998). Plaintiff's subsequent affidavit is contradicted by the medical records, which plaintiff testified, under oath at his deposition, were based on statements he made to his doctors and were true to the best of his ability [Doc. 25-11, pp. 140–41]. Accordingly, plaintiff cannot rely on his statements in his later-filed affidavit to avoid summary judgment.

Because the evidence establishes that plaintiff knew or reasonably should have known of his injury by March 2017, and that it was caused by his work jacking the railcars, when he sought medical treatment for such pain, and that his later, April 2018 pain was an aggravation of the prior pain, the Court finds that there is no genuine issue of material fact as to whether plaintiff's claim is barred by the FELA's three-year statute of limitations.

12

Accordingly, defendant's motion for summary judgment on this ground will be **GRANTED**.

IV. **Conclusion**

For the reasons set forth above, defendant's motion for summary judgment [Doc. 22] will be **GRANTED** and this case will be **DISMISSED**. A separate order will follow.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

13